NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RESHMA A.,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 22cv5617 (EP)<br><br>**OPINION** |

**PADIN**, **District Judge.**

Plaintiff Reshma A. appeals the Social Security Administration's ("SSA") denial of disability insurance benefits ("DIB"). For the reasons below, the Court will **GRANT** the appeal, **VACATE** the denial, and **REMAND** for proceedings consistent with this Opinion.[1]

I. BACKGROUND

At the time of her DIB hearing before an administrative law judge ("ALJ"), Plaintiff was 54 years old and had obtained her GED. R. 39. Plaintiff lived with her three, adult children, and worked at Walgreens one day a week for four hours as a cashier to repay a 401(k) loan. R. 33-34, 40. While working, Plaintiff was permitted to sit at the register because foot problems made it difficult to stand. R. 35. Plaintiff's daughter drove her to Walgreens because Plaintiff does not have a driver's license. R. 38.

---

[1] The Court has reviewed the administrative record (D.E. 5, "R."), Plaintiff's brief (D.E. 9, "Pl. Br."), Commissioner's opposition (D.E. 13, "Opp'n"), and Plaintiff's reply (D.E. 14, "Reply") and decides the appeal without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78(b).

Plaintiff filed for DIB benefits on December 2, 2019, alleging disability—diabetes and cardiac ablation[2]—beginning November 4, 2019.  R. 154-55, 176.  On June 30, 2021, an ALJ denied Plaintiff's DIB application.  R. 10-26 (the "Denial").  On August 5, 2022, the SSA Appeals Council denied Plaintiff's request for review.  R. 1-7.  Thereafter, Plaintiff commenced this appeal pursuant to the Social Security Act (the "Act").  D.E. 1; 42 U.S.C. § 405(g).  The Commissioner opposes.  *See* Opp'n.  Plaintiff replied.  *See* Reply.

## II.     LEGAL STANDARD FOR SOCIAL SECURITY APPEALS

### A.     "Disability" Under the Act

To receive benefits, a claimant must demonstrate "disability" within the meaning of the Act.  42 U.S.C. § 1382(a).  Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant qualifies as disabled only if physical or mental impairments are of such severity that the claimant is not only unable to perform past relevant work, but cannot, given age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which the claimant lives, a specific job vacancy exists, or the claimant would be hired if applying for work.  42 U.S.C. § 1382c(a)(3)(B).

### B.     The Five-Step Disability Analysis

An ALJ follows a five-step sequential evaluation process to evaluate whether a claimant is "disabled" as defined in the Act.  20 C.F.R. § 404.1520(a).  The ALJ must determine, in sequence,

---

[2] Plaintiff clarifies in this appeal that cardiac ablation is not a disability, but rather a treatment for Plaintiff's supra ventricular tachycardia ("SVT"), a fast or erratic heartbeat.  Pl. Br. at 5.

2

whether: (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment; (4) the claimant is able to do past relevant work, considering residual functional capacity ("RFC"); and (5) the claimant is able to do any other work that exists in significant numbers in the national economy, considering RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a).

In the first four steps, the burden is on the claimant to prove every element by a preponderance of the evidence. *See Wallace v. Sec. of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). Or stated differently, the claimant bears the initial burden of demonstrating a medically determinable impairment that prevents performance of past relevant work. 20 C.F.R. § 404.1512(a). In addition, between steps three and four, the ALJ must assess a claimant's RFC, which is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). This assessment requires the ALJ to consider the claimant's medically determinable impairments, including any non-severe impairments identified at step two. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In the fifth and final step, the SSA bears the burden of proving that work is available for the claimant in the national economy. *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); *Olsen v. Schweiker*, 703 F.2d 751, 753 (3d Cir. 1983). That is, once the claimant has established at step four an inability to do past relevant work, the SSA must show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f). If work a claimant can do "exists in the national economy," that is, if "there is a significant number of jobs (in one or more

occupations) having requirements which the claimant is able to meet with his [or her] physical or mental abilities and vocational qualifications," the claimant will not be considered disabled. *James v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 95342 (D.N.J. Jul. 22, 2015), at *53 (citing 20 C.F.R. § 404.1566(b)).

A reviewing court must affirm "if the conclusion reached in the administrative proceeding is supported by substantial evidence." 42 U.S.C. § 405(g); *Simmonds v. Heckler,* 807 F.2d 54, 58 (3d Cir. 1986). The standard is a deferential one; courts must not substitute their own judgment for that of the fact finder. *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

### III.   THE ALJ'S DECISION

Plaintiff does not dispute steps one, two, or three of the ALJ's analysis here. Pl. Br. at 10. Nor does Plaintiff dispute the ALJ's step-four finding that Plaintiff cannot perform prior relevant work ("PRW"). Plaintiff objects primarily to the ALJ's step-four RFC determination, and consequently the step-five finding "that other jobs are available under the RFC and the resulting determination that she is not disabled." Pl. Br. at 13. The ALJ's RFC determination is therefore the core of the dispute.

The ALJ's RFC determination, as relevant here, is that Plaintiff can perform "light work" with certain limitations. Specifically, Plaintiff can still

> perform light work . . . except, the claimant can lift and/or carry up to 20 pounds occasionally; 10 pounds frequently; stand and/or walk with normal breaks for a total of about 3 hours in an 8-hour workday; sit with normal breaks for a total of about 6 hours in an 8-hour workday; can occasionally climb ramps and stairs; no ladders, ropes, or scaffolds; frequent balancing, occasional kneeling, crouching, stooping and no crawling; does not require manipulation utilizing the bilateral lower extremities, such as foot controls or foot pedals; frequent reaching; frequent fine and gross manipulation; and does not involve hazards such as dangerous machinery, motor vehicles, unprotected heights; or vibrations; allows a sit/stand option at will while remaining on task; avoids concentrated exposure to odors,

4

> dusts, fumes, gases, poor ventilation, toxic dusts, chemicals, and other cardiac irritants; that also takes into account nonexertional limitations allowing the performance of simple, routine, and repetitive tasks specifically (SVP 1 and 2) which involve making simple decisions, and only occasional changes in routine.

R. 18.

At the fifth step, the ALJ considered Plaintiff's age, education, work experience, and RFC to determine that jobs exist in significant numbers in the national economy that Plaintiff can perform. R. 21 (citing 20 CFR § 404.1569). Because the ALJ had determined at step four that claimant had the RFC to perform light work impeded by certain limitations, the ALJ consulted the testimony of a vocational expert ("VE"). R. 21. The ALJ accepted the VE's testimony that an individual with Plaintiff's limitations could still perform "light work" jobs that existed in the national economy, specifically Shipping Weigher (6,500 in the national economy), Marker (65,000), Photo Copier (5,000), Order Caller (19,000), and Tan Salon Attendant (541).[3] R. 21-22. Based on these determinations, the ALJ found Plaintiff "not disabled" pursuant to the Act. R. 22.

---

[3] Though not explicitly raised as an issue here, this Court adds its voice to the growing chorus of skepticism of the SSA's continued reliance upon the outdated Dictionary of Occupational Titles ("DOT"). *See Rickard v. SSA*, 2009 U.S. Dist. LEXIS 134453, at *24 (M.D.Tenn. Nov. 12, 2009), R. & R. adopted, *Ricard v. Astrue*, 2009 U.S. Dist. LEXIS 116109 (M.D.Tenn Dec. 14, 2009). Indeed, though the Department of Labor itself uses a newer version, called O*Net, the SSA still does not. *See Feeley v. Comm'r of Soc. Sec.*, 2015 U.S. Dist. LEXIS 71690, at *27 (D.N.J. June 3, 2015); Lisa Rein, *Social Security denies disability benefits based on list with jobs from 1977*, Washington Post, Dec. 27, 2022, https://www.washingtonpost.com/politics/2022/12/27/social-security-job-titles-disabled-applicants-obsolete/ ("But after spending at least $250 million since 2012 to build a directory of 21st century jobs, an internal fact sheet shows, Social Security is not using it, leaving antiquated vocational rules in place to determine whether disabled claimants win or lose."); *see also Cunningham v. Astrue*, 360 Fed. App'x 606, 615 (6th Cir. 2010) (remanding to the Commissioner where the two DOT job categories relied on appeared to be obsolete).

IV.     ANALYSIS

   A.     **The RFC Contradicts Itself**

The crux of Plaintiff's appeal is that the RFC is internally contradictory and reflects sedentary, not light work.  The Court agrees.

"[A] claimant's residual functional capacity is always expressed as the *most* a claimant can do."  20 C.F.R. § 404.1545(a) (emphasis added); *Lackey v. Colvin*, No. 12-516, 2013 U.S. Dist. LEXIS 64647, at *10 (W.D. Pa. May 7, 2013) ("[RFC] is not the least an individual can do despite her limitations but the most.").  Depending on the RFC, an ALJ will determine that a claimant can perform work at certain exertion levels including, as relevant here, sedentary or light work.  Sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567.

But light work, as relevant here, is defined as

> lifting no more than 20 pounds at a time with *frequent* lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.* (emphasis added).

The Commissioner's opposition focuses on the portion of Plaintiff's brief arguing the appropriate designation of light or sedentary work to fit Plaintiff's RFC, arguing that a job "could

6

be considered light work if it involves sitting most of the time with some pushing and pulling of arms or leg controls." Opp'n at 21 (citing 20 C.F.R. § 404.1567(b)). But the problem is not that the RFC is *between* exertion categories; it contradicts itself because it is in *both* categories. *Cf. McClure*, 2016 U.S. Dist. LEXIS 120181, at *7 (ALJ's conclusion that the plaintiff could only stand/walk two hours per day put her closer to sedentary work than light work and thus, her exertional limitations did not fall "somewhere in the middle").

Indeed, the "exceptions"/limitations to the RFC's light work designation swallow the rule. Specifically, the RFC provides that Plaintiff can "lift 10 pounds frequently." R. 18. But because "frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 SSR LEXIS 30, at *14. Similarly, a "light" job requires "a good deal of walking or standing," which is "the primary difference between sedentary and most light jobs." 1983 SSR LEXIS 30, at *13.

Thus, the RFC states simultaneously that Plaintiff can stand, *at most*, for 3 hours per day, but also that Plaintiff can "frequently" lift 10 pounds, which requires Plaintiff to stand *more than* 3 hours per day. 1983 SSR LEXIS 30, at *14 ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."); *see also Campbell v. Astrue*, No. 09-5356, 2010 U.S. Dist. LEXIS 143997, at *16-18 (E.D. Pa. Oct. 29, 2010) (finding similar contradiction); *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956, 970 (E.D. Mich. 2017) ("[S]omeone who can perform light work must be able to lift and carry 10 pounds for 2.67-5.33 hours per day. By logical extension, light work requires a person to be on their feet for 2.67-5.33 hours in a day, while lifting and carrying up to 10 pounds in that time.");

7

*Ford v. Colvin*, 2015 U.S. Dist. LEXIS 99991 (D.Del. Jul. 31, 2015), at *25 (Remand required where ALJ offered no explanation as to why the "plaintiff cannot do either of the two things at the heart of light work [walking/standing and lifting/carrying] and still be classified as capable of performing it."); *McClure v. Comm'r of Soc. Sec.*, 2016 U.S. Dist. LEXIS 120181, at *7 (S.D. Cal. 2016) (ALJ's conclusion that the plaintiff could only stand/walk two hours per day put her closer to sedentary work than light work and thus, her exertional limitations did not fall "somewhere in the middle.").

This distinguishes it from the RFC in *Wyman v. Colvin*, cited by the Commissioner, which permitted "lifting/carrying up to 20 pounds *occasionally*; sitting 4 hours out of an 8-hour workday (in 1 hour increments); standing 4 hours in an 8-hour workday (in 1 hour increments); [and] walking 2 hours in an 8-hour workday."  No. 15-5721, 2016 U.S. Dist. LEXIS 101190, at *14-15 (D.N.J. Aug. 1, 2016) (emphasis added).  Accordingly, there is a basis to vacate the ALJ's decision; the remaining issue is the remedy.

### B.  Remand is the Appropriate Remedy

Courts are not limited to ordering a remand for further proceedings. Instead, "[w]hen reversing the SSA's decision under 42 U.S.C. § 405(g), courts 'may choose to remand to the Secretary for a further hearing or simply . . . award benefits.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357-58 (3d Cir. 2008) (quoting *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984)).  Deciding whether to remand for further proceedings or simply to award benefits requires weighing two factors: the delay, and the record.  *Diaz v. Berryhill*, 388 F. Supp. 3d 382, 391-92 (M.D. Pa. 2019).

First, the delay.  Social Security disability determinations take time.  *See Beirouti v. Comm'r of Soc. Sec.*, No. 20 CV 5006, 2021 U.S. Dist. LEXIS 244967, at *1 (E.D.N.Y. Dec. 21,

2021) ("Among the many ills associated with appeals of Social Security disability determinations is the problem of delay."). Courts measure this delay both in terms of the passage of years and by reference to whether there have been prior appeals and remands. *Diaz*, 388 F. Supp. 3d at 391-92. Certainly, delays of several years involving one or two prior remands have been found to constitute excessive delays. *See, e.g.*, *Brownawell*, 554 F.3d at 358 (8 years delay, and 2 prior remands, benefits awarded); *Podedworny*, 745 F.2d at 221 (award of benefits after two appeals, 5½ years of delay); *Halloran v. Berryhill*, 290 F. Supp. 3d 307, 321 (M.D. Pa. 2017) (4 year delay, benefits awarded).

Here, this matter involves a first appeal to district court pending nearly four years since Plaintiff first filed her claim on December 2, 2019. But even shorter delays have resulted in remand. *See Beirouti*, 2021 U.S. Dist. LEXIS 244967, at *1-2 (E.D.N.Y. Dec. 21, 2021) (remanding for award of benefits when plaintiff had filed for disability more than three and a half years prior, including a one-year period when the matter was pending in district court).

When the delay is shorter, the second factor, the claim's underlying merits, gains added importance. Under this factor, "[t]he district court can award benefits only when [first] the administrative record of the case has been fully developed and [second] when substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits." *Gilliland v. Heckler*, 786 F.2d 178 (3d Cir. 1986). These requirements are met whenever the court finds the record, including the medical opinion evidence, to be "extensive and well developed." *Diaz*, 388 F. Supp. 3d at 391; *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d at 358 (remanding for award where claimant's "treating physician for over three years, twice opined that a finding of disability was justified"); *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 212 (3d Cir. 2019) (remanding to award benefits where the record "is unlikely to benefit from further development" because the

9

vocational expert's answers already "contained substantial evidence that the claimant suffered from a severe mental disability that rendered her unable to engage in substantial gainful activity")

Included in the examination of the merits is a case's procedural posture, "particularly which party bears the burden of proof and production on issues of disability." *Diaz*, 388 F. Supp. 3d at 391-92. "[R]emand for benefits calculation is appropriate when the record[ ] provide[s] persuasive evidence of total disability that render[s] any further proceedings pointless." *Stacey v. Comm'r.*, 799 F. App'x. 7, 11 (2d Cir. 2020) (ruling that the claimant was totally disabled and entitled to benefits because the VE "testified without contradiction that jobs do not exist in significant numbers in the national economy for an employee who is 'off-task' for at least 15% of the workday").

As discussed above, the RFC is internally inconsistent for reasons that are unclear on this record. And the inconsistency is not clarified by the hypothetical questions posed by the ALJ to the VE about jobs that exist in the national economy reflecting Plaintiff's RFC and limitations. R. 44-47. Nor does the remainder of the VE's testimony address the inconsistency; rather, much of the testimony focuses on certain jobs' availability of a sit/stand option, a portion of the RFC not directly at issue. Accordingly, remand is appropriate. *See Wilkerson*, 278 F. Supp. 3d at 971-973 (collecting cases in which remand was appropriate for inconsistency). Because remand is appropriate, the Court need not address Plaintiff's other arguments.

V.   **CONCLUSION**

For the reasons above, Plaintiff's appeal will be **GRANTED**, the ALJ's denial of benefits will be **VACATED**, and the matter will be **REMANDED** to the Social Security Administration for further proceedings consistent with this Opinion. An appropriate Order follows.

Dated**:** September 18, 2023

*Evelyn Padin*
Evelyn Padin, U.S.D.J.

10